Filed 6/27/23  P. v. Phelps CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | E078698 |
| v. | (Super.Ct.No. INF059428) |
| ALEX ALLEN PHELPS, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Dean Benjamini, Judge.
Reversed.

Michael A. Hestrin, District Attorney, and Sophia Choi, Deputy District Attorney,
for Plaintiff and Appellant.

Britton Donaldson, under appointment by the Court of Appeal, for Defendant and
Respondent.

1

## INTRODUCTION

A trial court granted defendant and respondent Alex Allen Phelps's petition for dismissal of all charges against him filed pursuant to Penal Code[1] section 1203.4b. The People appeal, and in its opening brief contend that the court had no authority to grant the petition since defendant failed to meet the statutory requirements for relief.

On May 1, 2023, on our own motion, we requested supplemental briefing on whether the amendment to section 1203.4b, subdivision (a)(1), which expanded relief and became effective on September 29, 2022, had any effect on the appeal. The parties submitted supplemental briefing as requested, which we have considered in deciding this case.

We agree with the People that defendant has failed to meet the statutory requirements for relief and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Defendant's son (the child), who was two and one-half months old, was left in defendant's exclusive care and custody, while the child's mother left to check on their other child. When she returned, the child was not breathing. They took the child to the hospital, where she died as a result of blunt-force trauma to the head. Defendant initially denied knowing how the child sustained a head injury, but then claimed the injury may

_____

[1] All further statutory references will be to the Penal Code unless otherwise indicated.

[2] Because defendant pled guilty pursuant to a plea agreement, the factual background is derived from the People's request for disposition/ruling filed on August 18, 2021.

have occurred when she rolled off the couch and onto the carpet. During an autopsy, the medical examiner observed multiple retinal hemorrhages, a subdural hematoma, bruises and swelling to the brain, and a bruise on the child's right eyelid. The medical examiner opined that the injuries were consistent with being struck or thrown against a soft object.

On December 1, 2008, the People filed an information charging defendant with murder (§ 187, subd. (a), count 1) and assault resulting in the death of a child under the age of eight (§ 273ab, count 2). On August 12, 2010, the People filed a first amended information charging defendant with voluntary manslaughter (§ 192, subd. (a), count 1) and four counts of infliction of cruel and inhuman corporal punishment on a child (§ 273d, subd. (a), counts 2-5). Pursuant to a plea agreement, defendant pled guilty to all five counts. The court sentenced him to 16 years four months in state prison, in accordance with the terms of the agreement.

On July 29, 2021, defendant filed a petition for dismissal pursuant to section 1203.4b, alleging that he successfully participated in a conservation camp program called "Firefighter Training Program" from September 18, 2020, to the present. He also requested early termination of parole. Defendant attached a personal letter to the court stating that he served as an institutional firefighter from November 9, 2019, to September 18, 2020, with the California Rehabilitation Center Fire Department. He also stated that he was currently enrolled in the CAL-FIRE Ventura Training Center (VTC) Fire Academy in Camarillo, California. Defendant asked the court to dismiss his case so that he could obtain his Emergency Medical Technician (EMT) license. He attached documentation showing he was currently participating in the Firefighter Training and

3

Reentry Program at the VTC. A letter from Parole Agent Angelica Garcia indicated defendant was accepted into the voluntary 18-month program on November 16, 2020, and a letter from an administrative specialist at VTC also said he started in November 2020. The documentation also included a letter from Fire Captain Mikeal Gates, who worked at the California Rehabilitation Center in Norco, stating that defendant was assigned to his institutional firefighter program on November 9, 2019, and defendant was "paroled in good standing from" the program on September 4, 2020. Defendant also attached copies of various certificates he earned.

The People opposed the petition. On August 20, 2021, the court held a hearing, and the prosecutor pointed out that one of the requirements of section 1203.4b is that the Secretary of the California Department of Corrections and Rehabilitation (CDCR) certify to the court that a defendant has successfully completed the required program, before the court exercises its decision on whether to grant or deny the petition. The prosecutor further argued that based on the facts of the case and the nature of what defendant pled to, it was not in the interests of justice to grant the petition. Defense counsel asserted that defendant had completed an 18-month program and took advantage of various programs in custody. The court noted that the form submitted by defendant said he was asking to terminate his parole, and it was unsure about doing that. The People responded that perhaps it would be better for defendant to request dismissal after completing his parole, and further noted the facts of the case were egregious. The court denied the petition.

On November 9, 2021, defendant filed another petition for dismissal pursuant to section 1203.4b, alleging that he successfully participated in a conservation camp

4

program called "Firefighter Training Program" from September 18, 2020, to October 2021, and stating he had been released from custody. He attached the same documentation from the prior petition. The People again opposed the petition.

On or about November 10, 2021, the superior court clerk sent a notice of filing of petition for dismissal (Pen. Code, § 1203.4b) and request for certification to the California Rehabilitation Center in Norco, stating that defendant had filed a petition. The notice further stated: "Pursuant to statute, when a petition is filed, the court is required to provide a copy of the petition to the responsible authority to obtain certification of the petitioner's participation [in] fire camp. CDCR is then required to certify whether the petitioner successfully participated in the incarcerated individual conservation camp and has been released from custody. [¶] Please provide certification of the petitioner's participation to the court indicated above by: 11/24/2021."

On November 30, 2021, the court continued the hearing on the petition to obtain the certification from the CDCR.

On December 16, 2021, a certification of participation of fire camp form was filed. It was signed by a CDCR Classification and Parole Representative and stated that defendant "[d]id not participate in the above-listed fire camp." The fire camp listed was the California Rehabilitation Center in Norco.

Defendant moved to continue the hearing two more times, and it was eventually held on February 7, 2022. That day, a memorandum from Fire Captain Mikeal Gates, dated January 25, 2022, was filed, in which he answered a series of questions from the defense attorney. Gates's responses included that defendant was incarcerated and

5

participated in the institutional firefighter program from November 9, 2019, until September 18, 2020, "when he paroled." Gates explained the difference between the institutional firefighter program and fire camp, stating that institutional firefighters protect prison infrastructure, and are available to respond to any incident in the county if requested, whereas fire camp firefighters only respond to wildfires, flooding, and forest restoration. Gates also stated that defendant responded to a wildland fire and several fires within the prison grounds in Norco.

After reviewing the evidence and the law, the court stated: "Although I will say that [defendant] does not fit within the specific letter of the law, I do believe he clearly fits within the spirit of the law. There is apparently a difference between one who is an institutional firefighter, meaning that they actually staffed the fire department within the institution and respond to fires within the institution that are structural fires, and someone who is part of the California Conservation Corps [*sic*] fire—conservation camp firefighting wildfires—or wildland firefighters. [¶] In [defendant's] position, he was part of the institutional firefighters, but he also responded to wildland firefighters and was trained in that as well. . . . [¶] . . . [¶] To say that [defendant] does not fall within the spirit of the law by virtue of him having the institutional firefighter training versus the wildland firefighter training, I think puts form before substance, and I don't think that would be the equitable and the just resolution in this particular case."

The People acknowledged the certificates and letters defendant submitted in support of his petition and commended him for all he had done, but argued that he was not eligible for relief since he did not participate in the specific program required by the

6

statute.  Defense counsel stated that defendant participated in 10 months of training "in good faith as an incarcerated firefighter" with the expectation that he would have his record expunged for purposes of being employed, after he was paroled.  Defense counsel added that defendant was already discharged and had completed 18 months of training at VTC, which was a California Conservation Camp program.  The court reiterated that defendant fell within the spirit as opposed to the letter of the law.  Thus, it granted the requested relief and ordered dismissal of the underlying charges.

## DISCUSSION

Defendant Failed to Establish His Compliance with the Statutory Requirements

The People argue that the trial court was without authority to exercise its discretion and grant defendant's petition for dismissal pursuant to section 1203.4b since he did not meet the statutory requirements for relief.  In its opening brief, the People contend that (1) defendant did not successfully participate in a California Conservation Camp program while incarcerated, and (2) the Secretary of the CDCR (the Secretary) did not provide the required certification.  Defendant contends the court properly found that he came within the spirit of the law and that a reversal of the court's order would be a violation of his Equal Protection rights.  In its supplemental brief, the People acknowledge that section 1203.4b was amended to include relief for a defendant who participates in an institutional firehouse, and that defendant likely now qualifies. However, before the trial court may exercise its discretion and grant a dismissal, the Secretary must certify his successful participation.  In his supplemental brief, defendant contends he has successfully participated in an approved institutional firehouse program,

7

and we should affirm the court's order; however, if certification from the Secretary is required, this court should remand the case to the trial court to obtain the certification. Although we recognize defendant's outstanding efforts, we agree with the People that the Secretary must certify defendant's participation in the required program. Thus, we will reverse the order.

A. *Principles of Statutory Interpretation*

"Where a question of statutory interpretation based on undisputed facts is presented, we conduct an independent review of the statute in question." (*People v. Paige* (2020) 51 Cal.App.5th 194, 200.) "We have long recognized that the language used in a statute or constitutional provision should be given its ordinary meaning, and '[i]f the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters).' [Citation.] To that end, we generally must 'accord[ ] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose,' and have warned that '[a] construction making some words surplusage is to be avoided.' " (*People v. Valencia* (2017) 3 Cal.5th 347, 357 (*Valencia*).)

B. *Section 1203.4b*

Assembly Bill No. 2147 (Assem. Bill 2147), approved by the Governor on September 11, 2020, became effective January 1, 2021, and added section 1203.4b to the Penal Code. When enacted, this section provided: "If a defendant successfully participated in the California Conservation Camp program as an incarcerated individual

8

hand crew member, as determined by the Secretary of the Department of Corrections and Rehabilitation, or successfully participated as a member of a county incarcerated individual hand crew, as determined by the appropriate county authority, and has been released from custody, the defendant is eligible for relief pursuant to this section." (Former § 1203.4b, subd. (a)(1).) Section 1203.4b was subsequently amended and now provides, "If a defendant successfully participated in the California Conservation Camp program as an incarcerated individual hand crew member, as determined by the Secretary of the Department of Corrections and Rehabilitation . . . *or participated at an institutional firehouse, as determined by the Secretary of the Department of Corrections and Rehabilitation*, and has been released from custody, the defendant is eligible for relief pursuant to this section." (§ 1203.4b, subd. (a)(1) (italics added), amended by Stats 2022, ch. 771, §16 (Assem. Bill No. 160), eff. Sept. 29, 2022.)

"If the requirements of this section are met, the court, in its discretion and in the interest of justice, may permit the defendant to withdraw the plea of guilty or plea of nolo contendere and enter a plea of not guilty [and] the court shall thereupon dismiss the accusations or information against the defendant and the defendant shall thereafter be released from all penalties and disabilities resulting from the offense of which the defendant has been convicted, . . ." (§ 1203.4b, subd. (c)(1).)

C. *Defendant Did Not Meet the Statutory Requirements of Section 1203.4b*

In its opening brief, the People argue that defendant did not participate in a California Conservation Camp program while incarcerated, and the Secretary did not certify his successful participation in such, as required by the statute. However, in its

9

supplemental brief, the People acknowledge that the amendment to section 1203.4b expands relief to a defendant who participates at an institutional firehouse and thus likely includes defendant. Even so, the Secretary must determine and certify defendant's participation in such program. We agree. Defendant has not established that he met the statutory requirements, and it is even unclear from his petition and attachments how he was attempting to satisfy them.

Defendant's petition, filed on November 9, 2021, alleged that he successfully participated in a conservation camp program called "Firefighter Training Program" from September 18, 2020, to October 2021, and stated that he had been released from custody. The personal letter he attached to his petition requested the dismissal of his case under Assembly Bill 2147 and asserted that he was "currently . . . enrolled in the CAL-FIRE Ventura Training Center (VTC) Fire Academy." He attached a letter from Parole Agent Angelica Garcia, indicating he was released on parole on September 18, 2020, and confirming his participation at VTC. Garcia stated that VTC was a voluntary, 18-month firefighter training and reentry program that emphasized rehabilitation. She further stated that defendant was accepted into that program on November 16, 2020. From Garcia's description, the VTC Fire Academy does not appear to be a California Conservation Camp program that defendant participated in while incarcerated; rather, it was a voluntary training program, which defendant participated in while he was on parole. Moreover, the participation dates he alleged on his petition (September 18, 2020, to October 2021) do not match the acceptance date indicated by Garcia (November 16, 2020).

10

Defendant asserted in his letter, but not on his petition, that he served as an institutional firefighter from November 9, 2019, to September 18, 2020. We note that these dates also do not match the dates he alleged on his petition. Defendant attached a letter from Fire Captain Mikeal Gates from the California Rehabilitation Center in Norco, stating that defendant was assigned to his institutional firefighter program on November 9, 2019, while serving his sentence there. Notably, at the time defendant filed his petition, section 1203.4b, in relevant part, only applied to defendants who "participated in the California Conservation Camp program as an incarcerated individual hand crew member, as determined by the Secretary of the Department of Corrections and Rehabilitation." The evidence did not clearly establish that the California Rehabilitation Center in Norco was a California Conservation Camp program.

Furthermore, as to the statutory requirement that a defendant "participate[] in the California Conservation Camp program as an incarcerated individual hand crew member, *as determined by the Secretary of the Department of Corrections and Rehabilitation*" (§ 1203.4b, subd. (a)(1)), the only evidence of certification by the CDCR showed that defendant did not participate in a fire camp. The superior court clerk sent a request for certification to the California Rehabilitation Center in Norco, stating that defendant had filed a section 1203.4b petition and asking the CDCR to certify to the court whether he successfully participated in the "incarcerated individual conservation camp." In response, the CDCR representative filed a Certification of Participation of Fire Camp form, which stated that defendant "[d]id *not* participate in the above-listed fire camp." (Italics added.) The camp listed was the California Rehabilitation Center in Norco. With

11

regard to the expanded relief under the amended statute, the evidence appears to demonstrate that defendant participated in an institutional firefighter program while he was incarcerated. However, section 1203.4b requires that such participation be "determined by the Secretary of the Department of Corrections and Rehabilitation" (§ 1203.4b, subd. (a)(1)), and there has been no attempt to have the Secretary certify defendant's participation in an institutional firefighter program.

In sum, "courts must look first to the words of the statute, giving effect to their plain meaning. If those words are clear, we may not alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1437; see *Hennigan v. United Pacific Ins. Co.* (1975) 53 Cal.App.3d 1, 7 ["We may not disregard or enlarge the plain provisions of the statute, nor may we go beyond the meaning of the words used when they are clear and unambiguous."].) Section 1203.4b does not require interpretation since it is not ambiguous. (*Valencia*, *supra*, 3 Cal.5th at p. 357.) Defendant's petition and supporting documentation did not clearly allege or establish that he satisfied the requirements of the statute. Specifically, the petition alleges that he successfully participated in a conservation camp program, but the evidence does not establish such. Conversely, the petition does *not* allege that he participated at an institutional firehouse, although the evidence appears to show that he did; however, the Secretary has not determined or certified such participation. Since the requirements were not met, according to the statutory terms at the time of the hearing, the court erred in granting him relief. (§ 1203.4b, subd. (c)(1) ["*If* the requirements of this section are met, the court, in its

12

discretion and in the interest of justice, may permit the defendant to withdraw the plea of guilty . . . ." (Italics added)].)[3] Since the petition in this case does not allege that defendant participated at an institutional firehouse, and the Secretary has not determined such, the statutory requirements have still not been met.

We acknowledge defendant's contention that the denial of his petition, based on the People's argument, would violate his right to equal protection. He asserts that he participated in the California Conservation Camp at VTC after he was released on parole, while noting that only individuals who participate in a fire camp *while incarcerated* are entitled to relief under section 1203.4b. Defendant concedes that he did not raise an equal protection argument below. We conclude he forfeited his equal protection claim by failing to raise or develop it below. (*People v. Hartshorn* (2012) 202 Cal.App.4th 1145, 1151.) Although we have discretion to address the claim, we decline to do so, especially since defendant alleged in his supplemental brief that he qualifies for relief based on his participation in an institutional firehouse program.

We note the statute provides that "[a]ny denial of relief pursuant to this section shall be without prejudice." (§1203.4b, subd. (a)(2).) Therefore, we will reverse the court's order, and defendant may file another petition if he so chooses.

---

[3] In light of our conclusion, we decline to further address defendant's claims that the court properly found he came within the spirit of the law.

13

## DISPOSITION

The order granting defendant's section 1203.4b petition is reversed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
                                                                                    J.

We concur:


McKINSTER
          Acting P. J.


RAPHAEL
                    J.

14